JANVIER, Judge.
The two automobiles which were involved in the collision which gave rise to this suit were both on Canal Boulevard, in New Orleans. One had been going in a northerly direction towards Lake Pontchartrain and had turned to its left, traversing the wide neutral ground of Canal Boulevard, its driver, Glenn D. Murray, intending to enter Filmore Avenue in a westerly direction. This car was struck on the extreme rear of its right side by the other automobile, owned by Calvin W. liams and driven by his minor son, James liams, the liams car being on Canal Boulevard, going in a southerly direction away from Lake Pontchartrain.
The accident occurred at about 5:30 o’clock on the afternoon of April 17, 1956. The liams car which struck the side of the car driven by Murray was seriously damaged, and liams, the owner, brought this suit against Murray, charging that he had been at fault in that, after turning to his left, he had failed to bring his car to a stop before entering the other roadway, and that in this he violated the provisions of the traffic ordinance of the City of New Orleans.
The other defendants are Rimrock Tidelands, Inc., the employer of Murray, and The Fidelity and Casualty Company of New York, the liability insurer of said Rimrock Tidelands, Inc. The amount prayed for is $467.98.
The defendants, admitting the occurrence of the accident, averred that it resulted solely from negligence on the part of young liams in that, in operating his car on Canal Boulevard, he failed to keep a proper lookout for other vehicles; operated it at a rate of speed in excess of fifty miles an hour and failed to yield the right of way to Murray, whose car had already entered and preempted the intersection.
It is further contended by defendants that in any event the amount claimed by plaintiff is grossly excessive in that his automobile was so severely damaged that it should not have been repaired and that its value prior to the collision was substantially less than the cost of repairing it.
There was judgment in favor of plaintiff and against all three defendants as prayed for in the sum of $467.98, and all defendants have appealed suspensively and devolu-tively.
Usually it is not difficult to determine just where the responsibility lies where, on a double roadway neutral ground boulevard, one car turns left across the neutral ground and is run into by a car going in the opposite direction on the other roadway. *515 In such case the driver who has turned across the other roadway must exercise extreme caution.
Murray, an employee of Rimrock Tidelands, Inc., was operating the 1956 Oldsmobile car which his employer had rented from Gordons Auto Rental Company of Shreveport, Louisiana. It was run into near its right rear end by the 1949 Buick automobile owned by Calvin W. Iiams and driven at the time by James Iiams, the minor son of plaintiff.
There are certain facts which are made clear by the record. Murray had driven the automobile of the rental company out Canal Boulevard in a northerly direction, had turned left at the intersection of Fil-more Avenue, had traversed the very wide neutral ground of Canal Boulevard, and had entered the other roadway without bringing his vehicle to a complete stop. After entering that roadway of Canal Boulevard, he proceeded about half way across it when his car was violently struck near the rear by the car driven by young Iiams which approached the intersection at a speed of at least fifty miles an hour and skidded a distance of from 35 to 50 feet before it struck the car driven by Murray.
It is contended on behalf of plaintiff that, in failing to bring his car to a stop before attempting to enter and cross the west side roadway of Canal Boulevard, Murray violated the provisions of the traffic ordinance of the City of New Orleans.
In his petition plaintiff alleges that such a stop is required by the provisions of Ordinance No. 13,702 C.C.S. In his brief and in oral argument counsel for plaintiff maintains that the failure to stop constituted a violation of section 66 of Ordinance No. 18,202 C.C.S.
In neither the older Ordinance, No. 13,702, nor in the present Ordinance, No. 18,202, which supersedes No. 13,702 and was effective at the time of the accident, is a stop required. Section 66 of Article VIII of the current Ordinance (18,202 C.C.S.) does not require a stop though it does provide that the operator of a vehicle which is crossing a boulevard “shall proceed cautiously, yielding to vehicles which are within the intersection or approaching so closely as to constitute an immediate hazard.”
Thus if Murray violated the requirements of that ordinance, the violation cannot be based on his failure to stop, and it becomes necessary to determine whether he violated the ordinance in attempting to cross when the Iiams car was “approaching so closely as to constitute an immediate hazard.”
Standing about eight or ten feet from the curb of Canal Boulevard was a bus of New Orleans Public Service, Inc., which a prospective passenger had just entered. This bus had been driven in Canal Boulevard in a direction away from Lake Pontchartrain and the driver had swerved it from its course approximately in the center of the roadway to a position near the curb where he had stopped in order that the prospective passenger might enter.
Lloyd Paul Bordelon, the bus driver, says that, after the passenger had entered, he was about to give the necessary change to that passenger when he “heard the screoch-ing of tires,” and, looking out of the left side front window of the bus, saw the car driven by young Iiams. He estimated its speed at about fifty miles an hour, “or in the neighborhood of fifty-five miles an hour.” He “gauged the speed” of the Iiams car “by the length of the skidding and the speed he was passing the bus and hit the other car.” He says that the Buick driven by young Iiams skidded into the intersection and struck the car driven by Murray a violent blow knocking it completely around and into a truck which was waiting on Filmore Avenue to cross Canal Boulevard and that the car operated by Murray entered the intersection at a very slow speed. He says too as he was approaching the corner, and noticed the passenger standing at the curb, he started pulling over to the curb and that as he did he looked into *516 his rear view mirror and that at that time there was no other car hack of his bus which he could see in that mirror.
There was still another eye-witness who was not involved in the collision itself. He was Henry Jackson who was operating a truck on Filmore Avenue and who intended to cross Canal Boulevard but stopped, seeing the bus at the corner and noticing the car driven by Murray about to cross the roadway in the opposite direction to that in which he was going. Back of the bus he saw the car of Iiams which was approaching the intersection. Referring to young Iiams, he says: “This boy was coming from back Canal Boulevard,” and “tried to put on his brakes and stop but he could-n’t stop.” He adds that Iiam’s car skidded about 35 or 40 feet into the side of the car driven by Murray; that the impact was so heavy that he was surprised that “somebody didn’t get killed in the accident.” He says that the crash “threw” Mr. Murray’s car about 25 or 35 feet into the truck which he was operating and which was stopped in Filmore Avenue.
The testimony of Jackson is severely criticized by counsel for plaintiff, who says that Jackson stated that Murray had stopped before entering the roadway of Canal Boulevard, although Murray himself admitted that he had not stopped. Jackson explained this by stating that, while he thought Murray had stopped, he based this on the fact that he noticed that he was going very slow. He added: “It looked to me like he stopped but I am not positive, but he wasn’t going fast.”
Counsel for plaintiff severely attacks the testimony of Murray, pointing to the statement of Murray that, before entering the roadway, he looked to his right and saw no vehicle approaching except the bus. Counsel argues that had Murray looked he must necessarily have seen the car driven by young Iiams, since obviously it was on Canal Boulevard and was approaching the intersection.
It is true that Murray said that he looked and saw nothing and that his view was not obstructed for a city block. However, he qualified that statement by saying: “I would say not obstructed with the exception that there was a city bus approaching,” meaning, of course, that that bus to some extent interfered with his view of other vehicles which might be coming in Canal Boulevard.
Our conclusion is that, while there was negligence on the part of Murray in entering the intersection without stopping, there was gross negligence on the part of young Iiams in operating his car at a tremendously excessive speed and in not affording Murray the opportunity of completing the crossing though he had entered it at a moderate speed and a substantial distance in front of young Iiams. In such a situation had there been no bus to interfere to any extent with the view of Murray, undoubtedly it should be held that the sole cause of the negligence was Murray’s negligence in not seeing the approaching car driven by young Iiams. But in view of the fact that the bus to some extent interfered with his view and that there was no reason for him to anticipate that any other vehicle would approach the intersection at a speed so grossly excessive, we conclude that his own negligence, though it contributed to the accident, was not the sole proximate cause and that there would have been no collision had young Iiams operated his car at anything resembling a reasonable speed and with due regard for the rights of others who might be crossing the roadway.
Since the negligence of young Iiams contributed to the accident, we conclude that the suit of the plaintiff should be dismissed.
Accordingly, the judgment appealed from is annulled, avoided and reversed, and the suit of plaintiff is dismissed at his cost.
Reversed.
REGAN, J., concurs.